UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

WILLIAM E. MITCHELL and ]
NANCY H. MITCHELL, ]
 ]
    Plaintiffs, ]
 ]
    vs. ]   7:08-CV-01249-LSC
 ]
OSI EDUCATIONAL SERVICES, INC., ]
et al., ]
 ]
    Defendants. ]

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion to transfer filed by Defendant Access Group, Inc. ("Access Group") on August 27, 2008. (Doc. 17.) Plaintiff William E. Mitchell ("Mitchell") sued Defendants for violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"); violating the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"); invasion of privacy, intentional infliction of emotional stress and outrage; and negligence. (Doc. 1.) The issue raised in Defendants' motion has been fully briefed by all parties and is now ripe for decision. Upon due

consideration and for the reasons stated herein, the motion to transfer will be denied.

II.   Facts.[1]

Mitchell executed an agreement with National City Bank to act as a guarantor on a ten thousand dollar ($10,000.00) student loan for his adult daughter, Susan Mitchell.  The contract consisted of a Cosigner Application and Loan Agreement (the "contract") and a separate Statement of Loan Terms and Conditions (the "Terms and Conditions").  The Terms and Conditions were incorporated into the contract by an "Agreements, Certifications, and Waivers by the Cosigner" clause in the contract itself. The Terms and Conditions contained the bulk of the contractual agreement, including the choice-of-law and forum selection clauses.  In late September 2007, Mitchell was informed that his daughter's account was past due. Mitchell asserts that Access Group, its agent David Schultz, and OSI Educational Services, Inc. ("OSI") engaged in abusive and threatening conduct in an effort to collect the debt, including the use of abusive

---

[1] For the purposes of this opinion, the facts are accepted as alleged in the complaint.  Recitation of the facts alleged by the plaintiff in this opinion is not to be construed as a verification that the allegations are true.

language, harassment, failing to provide required disclosures and written notices, repeated phone calls to both Mr. and Mrs. Mitchell, as well as Mitchell's 82 year old mother, and calling Mitchell while he was hospitalized.  Mitchell further claims that Access Group reported to consumer reporting agencies, including Defendant Experian, that he was delinquent in his obligation on the loan.  Plaintiff claims that Access Group knew or should have known that the debt was disputed and that the report of delinquency was therefore inaccurate.  Plaintiff further claims that Defendant Experian failed or refused to clearly indicate that the loan obligation was disputed.

Mitchell filed suit in this Court on July 15, 2008.  He contends that the Defendants violated the FDCPA and FCRA through improper debt collection and reporting activities, and that this Court has supplemental jurisdiction over the associated state law claims of invasion of privacy, intentional infliction of emotional distress, and negligence.

III.   Motion to Dismiss.

    A.   Standard

Both the Plaintiff and the Defendants rely on the law of Alabama and the 11th Circuit in determining the validity of the forum selection provision in the contract at bar despite the fact that the Terms and Conditions clause of the contract contains a choice-of-law provision selecting the "LAWS OF THE STATE OF OHIO" as governing disputes.  (Doc. 18-2, §L at ¶3 (capitalization in original).)  Therefore, this Court will look to Ohio law to determine the validity of the forum selection provision.

Under Ohio law, "[t]he plaintiff's choice of forum is to be given considerable weight and the balance of convenience, considering all of the relevant factors, should be strongly in favor of a transfer before such will be granted."  *Gold Circle Stores v. Body Maven, Inc.*, 711 F. Supp. 897, 900 (S.D. Ohio 1988).  When a forum selection clause is included in a contract, it will be a "significant factor that figures centrally in the district court's calculus."  *Cherokee Export Co. v. Chrysler Int'l Corp.*, 1998 U.S. App. LEXIS 1683 *7 (6th Cir. Feb. 2, 1998).  When a forum selection clause is disputed, a court attempting to determine its validity should remember that "[a] forum selection clause . . . is part of a contract, and principles of contract interpretation apply."  *In re Delta America Re Ins. Co.*, 900 F.2d 890, 892

(6th Cir. 1990); *Greenfield Prods. v. Batesville Tool & Die, Inc.*, 2008 U.S. Dist. LEXIS 32481 *7 (S.D. Ohio Apr. 2, 2008). A contract, of course, must result from a meeting of minds, and in order to bind another, an offer and acceptance is necessary. *Big Lots Stores, Inc. v. Jaredco, Inc.*, 182 F. Supp. 2d 644, 649 (S.D. Ohio 2002). It is well established that a party may conditionally accept an offer by indicating a willingness to enter into a bargain upon the fulfilment of certain conditions, including a change in a contract or agreement. Such an acceptance, unless governed by the Uniform Commercial Code, is "itself a counteroffer and operates to reject the original offer." *Purdin v. Hitchcock*, 1993 Ohio App. LEXIS 505 (Ohio Ct. App., Adams County Jan. 21, 1993); *Iselin v. U.S.*, 271 U.S. 136, 139 (1926)("It is well settled that a proposal to accept, or an acceptance upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested."). Therefore, a party to a contract may decide to reject certain terms in a form contract and conditionally accept the remainder. The burden then falls to the other party in the contract to accept or reject these modifications. Finally, if

there is a dispute regarding the forum, "[t]he moving party . . . has the burden of demonstrating that the case should be transferred to a different forum." *Gold Circle Stores v. Body Maven, Inc.*, 711 F. Supp. 897, 901 (S.D. Ohio 1988).

B.   Analysis

Because Plaintiff William Mitchell clearly indicated, in writing, that he did not agree to the forum selection clause in the contract at bar, and because the loan was subsequently issued, it is apparent that both parties agreed to waive the forum selection clause. Plaintiff William Mitchell declared under penalty of perjury that he "marked out provisions [of the contract] concerning venue," thus removing that clause from the contract to which he agreed. (Doc. 28, Ex. A.) Defendant Access Group asserts two defenses to this claim. First, it disputes the fact that Mr. Mitchell deleted this clause, noting that he has not provided a copy of the document bearing his edits. (Doc. 41 at 4.) Secondly, Access Group points to a clause in the contract that states, "A provision of my Application and Loan Agreement (including this Statement of Loan Terms and Conditions) may be modified only if jointly agreed upon in writing by you and me." *Id.* Access Group

maintains that Mr. Mitchell has presented no evidence that either Access Group or National City Corporation agreed in writing to these modifications.[2]  This Court finds neither argument availing.

Since Access Group seeks to enforce the forum selection clause and transfer this case to another jurisdiction, it bears the burden of proving that transfer is appropriate.  Access Group relies on the fact that the Plaintiff returned the contract without making a copy of the separate Terms and Conditions containing the forum selection clause, and therefore cannot prove that he made the changes he alleges.  But apparently Access Group has not maintained an original copy of the Terms and Conditions either, as they do not provide a clean, unedited copy to support their position that no amendments were made.[3]  Given that Plaintiff has provided a statement, under penalty of perjury, supporting his claim that he made the alleged amendments, Access Group must provide something other than mere

---

[2] Mitchell's daughter obtained the loan from National City Corporation through an Access Group Loan Program.  Access Group purchased the loan on June 27, 2007.  (Doc. 18 at 4.)

[3] Access Group does provide a copy of its Terms and Conditions, but it makes no affirmative representation that this is the actual copy Mitchell claims to have edited.

assertions that no changes were made for the Court to give the forum selection clause effect.

This Court is satisfied that Mitchell did excise the forum selection clause from the contract and that Access Group, by performing its obligations under the agreement, accepted this change. Access Group appears to be arguing that by ignoring a party's clear and unequivocal written statement, it will not be subject to such a contractual amendment, and thus can bind that party to the unmodified terms. Of course this position is untenable, and the fact that the loan itself was issued, along with untold amounts of documentation confirming the loan, establishes Access Group's acceptance of Plaintiff's changes.

Nonetheless, Access Group relies on the clause requiring changes to the contract be made in writing. According to Mitchell, he did not express his dissatisfaction with the forum selection clause orally. Instead, he exercised his rejection of the forum clause in a clear and universally accepted manner, by physically marking it out, in writing. Access Group was thus not bound to perform the contract. Mitchell had made a counter-offer to make a contract absent the forum selection clause. Access Group could

have rejected that counter-offer in favor of the original terms. It did not. Instead, Access Group issued the loan. While Access Group may have never drafted a specific written document acknowledging that the forum selection clause was removed, its actions served as a ratification of Mitchell's conditional acceptance and counteroffer. It is most likely the case that Access Group never even read the Terms and Conditions returned with the contract Mitchell signed and was therefore unaware of his proposed change. This Court will not reward Defendant's deliberate ignorance. One who accepts a contract is presumed to know its contents, and Access Group is bound by its agreement. *See Hughes v. Cardinal Federal Sav. & Loan Ass'n*, 566 F. Supp. 834, 844 (S.D. Ohio 1983).

Furthermore, there is a contradiction inherent in Access Group's contract. The clause requiring a writing by both parties to change the terms of the contract runs squarely into the contract's "Agreements, Certifications, and Waiver by the Consigner." In that section, the cosigner agrees to "waive notice of acceptance hereof, and waive all notices to which I might otherwise be entitled by law." (Doc. 18-3 at 2.) This statement appears to obviate the need for Access Group to specifically

inform the signer of its acceptance of any conditions the signer may place on the contract. Under the contract, Plaintiff Mitchell would neither be entitled to, nor have the expectation of, a notification of Access Group's acceptance of his conditions. Instead, the fact that Access Group provided the loan would serve as his only notification.

By issuing the loan, Access Group clearly evidenced its acceptance of Mitchell's conditions. It would be incredible to allow Access Group to bind another party to clauses of a contract that the other contracting party had clearly rejected by simply ignoring those changes and issuing the loan.

V.  Conclusion.

For the reasons herein stated, Access Group's Motion to Transfer is denied. A separate order consistent with this Opinion is issued herewith.

Done this 23rd day of October 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671